## Dietz & Company v. Cameron, Secretary of Banking.

*Securities—Stocks and bonds—Dealers—Registration—Secretary of Banking—Refusal to register dealer—Deputy Secretary of Banking—Delegation of authority—Securities Act of June 14, 1923.*

1. Under the Securities Act of June 14, 1923, P. L. 779, the Secretary of Banking is to appoint two deputies, and the deputies so appointed may hear the testimony of witnesses subpœnaed and examine the proofs of applicants for registration as dealers in securities, they may also perform such other ministerial or administrative duties as are imposed upon the secretary by the act, and even advise him of their conclusion, but the final decision of whether or not an applicant shall or shall not be registered rests with the secretary, and that burden cannot be shifted by him to others or delegated to his deputies.

*Practice, C. P.—Appeals to Court of Common Pleas of Dauphin County—Appeal from decision of Secretary of Banking—Hearing de novo—Securities Act of 1923.*

2. Upon the hearing of a petition for the reversal of the decision of the Secretary of Banking under section 19 of the Securities Act of June 14, 1923, P. L. 779, the Court of Common Pleas of Dauphin County is not bound by the evidence received and considered by the secretary; it is the duty of the court to hear and determine the case *de novo*.

*Securities Act of 1923—Refusal to register dealer—Reason for refusal—Publication of information by the Secretary of Banking.*

3. A statement by the Deputy Secretary of Banking, in the language of the Securities Act, that the proposed plan of doing business of the applicant is "unfair, unjust or inequitable" does not comply with the requirement of paragraph 2 of section 18 that the reason for refusing to register the applicant shall be briefly stated.

4. The publication by the Securities Bureau of information alleged to have been secured in an investigation is contrary to the express provisions of section 20 of the Securities Act. Evidence which the secretary hears, whether it be obtained from witnesses or from the books, accounts, records and correspondence of the applicant, must be treated as confidential.

Appeal from refusal of Secretary of Banking to register applicant as dealer in securities. C. P. Dauphin Co., Commonwealth Docket, 1924, No. 33.

*Hause, Evans & Baker* and *J. Earl Ogle*, for plaintiffs.

*J. W. Brown*, Deputy Attorney-General, for defendant.

WICKERSHAM, J., May 1, 1924.—The plaintiffs filed their petition with the Department of Banking, applying for registration as a dealer under the Securities Act of June 14, 1923, P. L. 779. The plan and character of the business of the applicant was stated in paragraph 15 of said application as follows: "The applicants do not sell any securities as principal. They act as brokers, buying and selling listed stocks and bonds for their customers on the New York Exchanges. They do not personally solicit or advertise." The applicants were given a hearing by the Securities Bureau of the Department of Banking. The Secretary of Banking was present the first day; thereafter the hearing was conducted by Deputy Secretary Einar Barfod. After considering the proofs offered by the plaintiffs at the several hearings aforesaid, W. J. Fallows, Deputy Secretary, on March 24, 1924, notified the plaintiffs that their application had been considered and that *he* was "not satisfied that the proposed plan of business of your association is fair, just and equitable." He further stated in said notice: "I, therefore, decline to register your association as a dealer in securities as provided by said act." The refusal to register the applicants thus appears to have been the official act of Deputy Secretary Fallows, and not the judicial act of the Secretary of Banking.

Dietz & Company v. Cameron, Secretary of Banking.

From the action of the said W. J. Fallows, Deputy Secretary, the applicant has perfected and filed its appeal, which is now pending, to which appeal the Secretary of Banking has filed his answer in compliance with the Securities Act.

In Bagley v. Cameron, 27 Dauphin Co. Reps. 1, 4 D. & C. 81, we decided that "upon the hearing of a petition for the reversal of the decision of the Commissioner of Banking under section 19 of the Securities Act of 1923, P. L. 779, the court is not bound by the evidence received and considered by the commissioner. It is the duty of the court to hear and determine the case de novo." Accordingly, this case came on to be heard before us April 17, 1924, at which time testimony was taken. It was further heard by the full court on April 28, 1924. We will only discuss such portions of the petition, answer and evidence which appear to us to be vital to a decision of this case.

The plaintiffs and defendant have requested us to find certain facts from the evidence produced at the trial. We have answered these requests and have filed our answers of record. We have also been requested to reach certain conclusions of law; all of which we have answered, but the first and fourth requests of applicant, we think, require some discussion on our part.

We have been asked to find that "the determination as to whether an applicant for registration as a dealer in securities should or should not be registered cannot be delegated to a deputy appointed by the Secretary of Banking under the provisions of the Securities Act." It appears from the evidence that the Secretary of Banking presided at the first hearing of the application of plaintiffs (N. T., page 65, et seq.). Final decision was not reached at the time the secretary presided and heard some of the testimony; neither did the Secretary of Banking pass upon the testimony taken at meetings other than the one over which he presided. It further appears that he did not know at the time the registration of this applicant was refused that it had been refused. On cross-examination, the Secretary of Banking was asked whether he specifically or generally delegated to his deputies the duty of hearing this case. He replied: "I did, generally; I delegated to them in writing the same powers I would have had as Secretary of Banking to pass on applications, take evidence, subpœna witnesses. Q. You have conferred that power on them? A. Yes, sir." Mr. Evans: "And to reach a conclusion, Mr. Cameron? A. Yes, sir" (N. T., page 68). Was such delegation of the duties imposed upon the commissioner, now the Secretary of Banking, by the Securities Act legally justifiable?

An examination of the said act shows, inter alia, in section 2, sub-section (e), paragraph 12, "the term 'commissioner' shall mean the Commissioner of Banking of the Commonwealth of Pennsylvania." The second paragraph of section 4 provides that "if the commissioner has reason to believe that any such employee has in any way violated . . . the provisions of this act, . . . he may order such employee to cease," etc. Section 5 requires a dealer who desires to be registered to submit a sworn application therefor to the commissioner upon such form as the commissioner may determine, and each application shall be accompanied by certificate or other evidence satisfactory to the commissioner. . . ." In section 6 it is provided that "every company registered shall file a written consent . . . that actions may be commenced against it in this Commonwealth by service of process upon the commissioner." Section 7 provides, "if the commissioner be satisfied that the applicant is of good repute and that the proposed plan of business of the applicant is not unfair, unjust or inequitable, he shall register the applicant. . . . Pending final disposition of an application, the commissioner may . . . grant temporary permission,

. . . subject to such terms and conditions as the *commissioner* may prescribe;" and it appears in the succeeding sections of the act that the commissioner is the person who shall determine, who may prescribe, who may require, who may issue, who may request, who may decide, who believes, who may suspend, who may restore to registration, who may revoke, and that "*all decisions of the commissioner shall be in writing, signed by him*, and shall briefly state the grounds therefor" (section 18) ; that the commissioner shall file an answer in cases of appeal; mere technical irregularities in the procedure of such commissioner shall be disregarded; he shall sign subpœnas, administer oaths and affirmations, examine witnesses and receive evidence, and may invoke the aid of the Court of Common Pleas where witnesses refuse to attend.

It thus appears throughout the act that the Commissioner of Banking, now entitled the Secretary of Banking, is the person who must act in proceedings such as this. *Can he delegate this power to a deputy?*

Section 25 of the Securities Act of 1923, P. L. 779, 789, provides: "The administration of the provisions of this act *shall be vested in the Commissioner of Banking;* the commissioner shall, with the approval of the Governor, appoint two deputies, who shall be learned in the investment banking business. The deputies appointed under this act shall perform such duties as the commissioner shall generally or specifically direct, and shall have all the powers by this act conferred on the commissioner which may be necessary for the complete discharge of such duties. . . ." Section 26 provides, *inter alia:* "The deputies and each of the employees shall take and subscribe and file the oath of office prescribed by law for the commissioner. Bond shall be given to the Commonwealth by the deputies . . . in such amounts and with such surety as may be determined by the commissioner, conditioned for the faithful performance of their duties."

We come, then, to consider what duties the deputies may perform under section 25 of the Securities Act from which we have just quoted. It appears from a careful reading of the act that many of the duties imposed therein upon the Secretary of Banking are merely ministerial, such as the conducting of hearings, the taking of testimony, the administration of oaths to witnesses, and such other matters mentioned in the act which are purely administrative and which do not require the exercise of judicial determination. There are other duties imposed upon the Commissioner of Banking by the act which, we think, are judicial, and such duties cannot be delegated by him to his deputies. Section 7 of the act requires the commissioner to be "satisfied that the applicant is of good repute and that the proposed plan of business of the applicant is not unfair, unjust or inequitable." This is a duty imposed upon the commissioner which involves judicial discretion and determination; a duty which cannot be deputed to another. Section 18 of the act provides that "all decisions of the commissioner shall be in writing, signed by him." While the deputies may hear the testimony of the witnesses subpœnaed, examine the proofs of the applicant, and perform such other ministerial or administrative duties imposed upon the commissioner by the act, and even advise the Secretary of Banking of their conclusion, the final decision as to whether or not the applicant shall or shall not be registered remains with the commissioner, and that burden cannot be shifted by him to others, nor can the duty to decide be delegated to his deputies under this act: Kershner v. Stoltz, 1 Pa. C. C. Reps. 72; McMasters v. Carothers, 1 Pa. 324; Reigart v. McGrath, 16 S. & R. 65-66.

"Official duties involving such discretion and trust that they must be performed by an officer personally cannot be delegated to a deputy: State v. Hastings, 10 Wis. 525; but ministerial duties may be delegated: People v.

Bank of North America, 75 N. Y. 547; and officers are frequently authorized to appoint deputies to perform their regular duties, and provision is sometimes made for the appointment of assistant officers. Deputies so appointed are state officers and not merely employees:" 36 Cyc., 859.

Discussing the powers of deputies in 22 Ruling Case Law, 584, it is stated: "Deputies are usually invested with all the power and authority of the principal. Thus, a deputy clerk may authenticate instruments for record when his principal is authorized to do so. But if an officer, such as sheriff or clerk of court, exercises both judicial and ministerial duties, the latter alone can be performed by deputy. For example, a deputy clerk of a court cannot determine whether an injunction should or should not issue, although this may be one of the normal powers of his principal. . . .

"In many jurisdictions the rule prevails that the deputy must sign in the name of his principal, because where the authority exercised by the deputy is manifestly a derivative and subsidiary one, it is the authority conferred on the principal and not an authority inherent in the deputy. It follows, in such cases, that the authority must be exercised in the name of him in whom it exists, and not in the name of him who has no recognized authority. Where this doctrine prevails, whatever official act is done by a deputy must be done in the name of his principal, and not in the name of the deputy. If he undertakes to act in his own name and on his own authority, he no longer acts as deputy, but in an independent capacity, and his acts can then no longer be recognized as official."

In Kershner v. Stoltz, 1 Pa. C. C. Reps. 72, it was held a ministerial office is one which merely involves the following of instructions, or one which can be performed without the exercise of more than ordinary skill and prudence. A judicial office is one which involves judgment and discretion. An officer whose duties are merely ministerial can appoint a deputy; but a judicial officer cannot delegate his power to another.

It thus appears that legislation authorizing a delegation of judicial power must be clear and specific. That the legislature did not intend to authorize the Commissioner of Banking to divest himself of the judicial powers conferred upon him by the act appears very clearly from a careful reading of the latter part of section 25, which provides: "In case of vacancy in the office of the commissioner, or in case of inability of the commissioner, by reason of absence, physical disability or other cause, to properly administer the provisions of this act, the Governor may designate a deputy appointed under this statute to act for and in such commissioner's stead, and thereupon the deputy thus designated shall have generally, for the time being, all the power and authority in this act conferred upon the commissioner."

If it was the intention of the legislature that all the duties, judicial as well as ministerial, required to be performed by the Commissioner of Banking by the Securities Act should be performed by his deputies, upon the designation of the commissioner, that part of section 25 which we have just quoted would have been unnecessary. There would then be no occasion for this special delegation of power if the earlier part of the section had been intended to authorize the commissioner to transfer all his duties to a deputy. Such authority can only be conferred upon one of the deputies when the exigency arises, which is fully set forth in that part of the section from which we have quoted. It is no answer to say that this provision, giving the Governor authority to designate a deputy with authority to act, was upon the theory that, in case of a vacancy in the office of the commissioner, the power of the deputy ceased because it gives the Governor the power to designate a deputy

Dietz .& Company *v.* Cameron, Secretary of Banking.

in case of the inability of the commissioner to act, as well as in the case of a vacancy.

Applying these principles to the case at bar, it appears from the testimony that the refusal to register the plaintiffs as dealers in securities in Pennsylvania was not the official judicial act of the Secretary of Banking, but was the act of his deputy, W. J. Fallows. The Commissioner of Banking did not know the application had been refused at the time it was refused. Referring again to the refusal attached to plaintiffs' appeal, and marked Exhibit "B," we quote the very language of the deputy: "I, therefore, decline to register your association as a dealer in securities as provided by said act. Very truly yours, W. J. Fallows, Deputy Secretary." It thus appears that it was the deputy secretary who declined to register the applicant. This he did not have the power to do. The decision should have been made by the Secretary of Banking and should have been signed by him: Section 18 of Securities Act. For the reasons we have just stated, we have affirmed plaintiffs' first request for conclusions of law.

Plaintiffs further complain that the proper judicial reason for refusing to register said partnership has not been stated. W. J. Fallows, in his letter of March 24th, marked in plaintiffs' appeal Exhibit "B," states, *inter alia:* "I have considered your application for registration as a dealer in securities in accordance with provisions of the Securities Act of June 14, 1923, and am not satisfied that the proposed plan of business of your association is fair, just and equitable." The complaint is that the Commissioner of Banking— not his deputy—should have found as a fact, if fact it be, that the applicant was not of good repute, or that the proposed plan of business of the applicant was unfair, unjust or inequitable. It also appears to us that the reason for refusing to register the applicant should have been stated more fully. Paragraph 2 of section 18 provides that the commissioner "shall briefly state the grounds" for his refusal. To merely state, in the language of the act, that the proposed plan of doing business of the applicant is unfair, unjust or inequitable does not comply with this requirement of the law. In a spirit of fairness to the applicant, the Commissioner of Banking should state briefly his reason for refusing to register the applicant.

We are further asked to find as a fourth conclusion of law that the publication by the Securities Bureau of information alleged to have been secured in an investigation is contrary to the express provisions of section 20 of the Securities Act. We have affirmed this request. Section 20 of the Securities Act provides, *inter alia,* that the "commissioner may require the attendance and testimony of witnesses, and of the production of any books, accounts, records, papers and correspondence, except stock transfer books or other records or indices, showing the names and addresses of stockholders, relating to any matter which the commissioner has any authority by this act to consider or investigate: . . . Provided, however, that all information of every kind and nature contained therein shall be treated as confidential by the commissioner, and shall not be disclosed to the public except under order of the court." We are of opinion that, under this provision of the Securities Act, the evidence which the commissioner hears, whether it be obtained from witnesses or from the books, accounts, records and correspondence of the applicant, must be treated as confidential by the commissioner. Inasmuch as the office of the applicant was closed, the public could not be served by the printing of the telegram and newspaper article furnished to the press by the Deputy Secretary of Banking. We think such practice is to be deprecated, because it is a clear violation of section 20 of the Securities Act.

After carefully considering the evidence heard by us at the trial of this case, we are not convinced that the defendant has established by the weight of the evidence either that the applicant is not of good repute or that the method of doing business of applicant is unfair, unjust or inequitable. Witnesses have testified to the good repute of the applicant; no witnesses have testified to the contrary. Witnesses have testified that the business of applicant has been conducted in strict conformity with the rules and regulations of the Consolidated Stock Exchange of New York, of which one of the partners is a member (N. T., page 52, *et seq.*). It also appears that the firm has connection with a member of the New York Stock Exchange, known as the Big Board (N. T., page 10), and that the books of the company have been regularly examined by accountants familiar with the methods of doing a brokerage business (N. T., page 69, *et seq.*). We fail to find upon this record any convincing evidence that the partnership now seeking registration has ever knowingly been guilty of either bucketing or nullifying. We find, therefore, from the evidence that the partnership making application for registration in this case is of good repute, and that the proposed plan of business of the applicant is fair, just and equitable.

Section 19 of the act provides that "the court's decision shall consult only the rights of plaintiff and the protection of the public," and having this in mind, in view of the facts which we have found and the conclusions of law which we have reached, the order of the Commissioner of Banking refusing to register the plaintiffs under the Securities Act of 1923 is reversed and the Commissioner of Banking is hereby directed to register the said applicant in compliance with the provisions of said Securities Act. Costs in this case to be paid by the Commonwealth of Pennsylvania.

From Sidney E. Friedman, Harrisburg, Pa.